IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:02-CV-20-F(3)

COPY

FILED

MAR 1 1 2002

DA... ... ...EL, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP. CLERK

| | |
|---|---|
| GOLETA NATIONAL BANK and ACE CASH EXPRESS, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| The Honorable HAL D. LINGERFELT, in his official capacity as the Commissioner of Banks of North Carolina, and | ) ) ) ) ) ) |
| The Honorable ROY COOPER, in his official capacity as the Attorney General of North Carolina, | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
AND/OR FOR JUDGMENT
ON THE PLEADINGS**

Pursuant to Rule 4.04 of the Local Rules of Practice and Procedure of the United States

District Court for the Eastern District of North Carolina, defendants Hal D. Lingerfelt, in his

official capacity as the North Carolina Commissioner of Banks, and Roy Cooper, in his official

capacity as the North Carolina Attorney General, submit this memorandum of law in support of

their motion to dismiss and/or for judgment on the pleadings.

In this case, plaintiffs Goleta National Bank ("Goleta") and Ace Cash Express, Inc.

("Ace"), seek to stop the State of North Carolina ("the State") from civilly prosecuting Ace in

state court for alleged violations of state lending and consumer protection laws. Defendants

Lingerfelt and Cooper seek dismissal of this case because plaintiffs have failed to state a claim

upon which relief can be granted, Fed. R. Civ. P. 12(c), and further seek dismissal of Goleta's

PARTIALLY
SCANNED

claims because this Court lacks subject matter jurisdiction over them, Fed. R. Civ. P. 12(b)(1) and 12(c).[1] More specifically, the Court should dismiss both plaintiffs' claims pursuant to the Younger abstention doctrine, see Younger v. Harris, 401 U.S. 37 (1971), and pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283, and should dismiss Goleta's claims because there is no case or controversy between defendants and Goleta.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 11, 2002, counsel for the State notified representatives of Ace Cash Express, Inc., that the State was about to file a lawsuit against Ace. (See Complaint, ¶ 12) The State, acting on relation of defendants Cooper and Lingerfelt, filed that action ("the state court action") in Wake County Superior Court on January 14. The State alleges in the state court action that Ace is engaged in the business of "payday lending" – the offering, arranging and making of small, short-term consumer loans at high interest rates – in violation of North Carolina's usury, unfair trade and loan broker laws. See Complaint, North Carolina ex rel. Cooper v. Ace Cash Express, Inc., No. 02-CVS-330 (Wake County Super. Ct. Jan. 14, 2002) ("State Court Complaint") (attached hereto as Ex. 1).[2]

---

[1] Defendants' arguments regarding plaintiffs' failure to state a claim upon which relief can be granted are raised pursuant to Rule 12(c) because the pleadings have been closed. See Fed. R. Civ. P. 12(h)(2); Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 2002 U.S. App. LEXIS 1059 at *8 (4th Cir. Jan. 25, 2002). Defendants read Rule 12 to permit them to raise their subject matter jurisdiction arguments pursuant to either Rule 12(b)(1) or Rule 12(c). See Fed. R. Civ. P. 12(h)(3).

[2] Pleadings and other documents filed with the Court in connection with the state court action, which currently bears the Eastern District file number 5:02-CV-69-F(3), are attached hereto as exhibits for the convenience of the Court.

2

Ace removed the state court action to this court on January 31, claiming that the State's

claims are completely preempted by sections 85 and 86 of the National Bank Act ("NBA"), 12

U.S.C. §§ 85 and 86. See Notice of Removal, North Carolina ex rel. Cooper v. Ace Cash

Express, Inc., No. 5:02-CV-69-F(3) (E.D.N.C. Jan. 31, 2002) ("Removal Notice") (attached

hereto as Ex. 2). The State, contending that this Court lacks federal subject matter jurisdiction

over the claims asserted in the state court action, moved to remand that case to state court on

March 4. The remand motion is currently pending before this Court.[3]

Meanwhile, on January 14, the same day as the state court action was filed, plaintiffs Ace

and Goleta National Bank filed this case ("the federal court action"). Ace and Goleta seek (1) a

declaration that the National Bank Act preempts any North Carolina laws purporting to prohibit

Ace from engaging in payday lending, (2) a declaration that any North Carolina laws purporting

to prohibit Ace from engaging in payday lending violate Ace's and Goleta's fourteenth

amendment rights to liberty and property, and (3) an injunction preventing the State from

enforcing North Carolina law against Ace in connection with Ace's payday lending activities.

(See Complaint, Prayer for Relief, ¶¶ (a)-(c))

Plaintiffs' request for declaratory and injunctive relief is based on the theory that Goleta

has certain rights under the National Bank Act that will be impaired if the State is permitted to

enforce North Carolina law against Ace. Plaintiffs allege that Goleta makes the payday loans at

issue in this case and in the state court action, and that Ace is merely Goleta's agent in the

---

[3] Defendants believe that their motion to dismiss this case and the State's motion to
remand the state court action should be considered together, as they are factually and
procedurally interrelated.

3

promotion, origination and servicing of these loans. (Complaint, ¶¶ 7, 10-11, 24) Defendants

(and the State in the state court action) deny that Goleta is the lender and allege that Ace – which

is not a national bank – in fact makes the loans. (Amended Answer, ¶¶ 2, 7); State Court

Complaint, 4, 7-11. The true identity of the lender is the principal factual issue in both this case

and the state court action. See Removal Notice, ¶ 17.

In Count I of their complaint in this case, plaintiffs allege that Goleta, as a national bank,

has a right under 12 U.S.C. § 85 to charge the interest rates allowed by its home state

(California), and that this right preempts any North Carolina law to the contrary. Plaintiffs

further allege that enforcement of North Carolina law against Ace in connection with the payday

loans at issue would impair Goleta's right to charge California-style interest rates, and therefore

would deprive both Ace and Goleta of their rights under federal law. (Complaint, ¶¶ 18-21) The

source of Ace's alleged rights under federal law is not identified.

In Count II, plaintiffs allege that 12 U.S.C. § 24 (Seventh) authorizes Goleta to make

payday loans through agents, including Ace. They further allege that enforcement of North

Carolina law against Ace would impair Goleta's right under the NBA to employ such agents and

therefore would deprive both Ace and Goleta of their rights under federal law. (Complaint, ¶¶

24-27) Again, the source of Ace's alleged rights under federal law is not identified.

In Count III, plaintiffs allege that 12 U.S.C. § 484 gives the United States Office of the

Comptroller of the Currency ("OCC") exclusive authority to exercise visitorial powers over

Goleta. (Complaint, ¶¶ 30-31) These visitorial powers allegedly include enforcement of federal

and state banking laws. (Complaint, ¶ 32) Plaintiffs allege that defendants, in the state court

action, are seeking to exercise visitorial powers over Goleta in violation of the Supremacy

4

Clause, U.S. Const. art. VI, § 2, and therefore are depriving both Ace and Goleta of their rights under federal law. (Complaint, ¶¶ 33-34) The source of Ace's alleged right to exclusive OCC oversight is not identified.

Finally, in Count IV, plaintiffs allege that North Carolina's usury and consumer protection laws are not rationally related to any legitimate governmental purpose in the context of the loans at issue in this case, and that the state court action against Ace deprives both Ace and Goleta of economic liberty and property without due process of law in violation of the fourteenth amendment. (Complaint, ¶¶ 37-38) Plaintiffs do not say what, if any, due process protections are missing from the state court action, nor do they explain why the North Carolina laws at issue in the state court action are not rationally related to any legitimate governmental purpose.

Defendants answered plaintiffs' complaint on February 25, filed an amended answer on March 11, and also on March 11 filed the present motion to dismiss and/or for judgment on the pleadings.

## II. SUMMARY OF ARGUMENT

Plaintiffs are seeking extraordinary relief in their complaint. They are asking this Court to enjoin an ongoing state court proceeding in which the State is attempting to enforce state laws against Ace. Under well-established federal precedent, however, plaintiffs have no right to the equitable relief they seek.

First, plaintiffs claims are barred by the <u>Younger</u> abstention doctrine, under which federal courts have persistently abstained from interfering in ongoing state court enforcement proceedings.

5

Second, the relief sought by plaintiffs is barred by the Anti-Injunction Act, 28 U.S.C. § 2283, which expressly prohibits federal courts from issuing injunctions to stay or enjoin state court proceedings.

Third, plaintiffs have the burden of establishing that they have standing to bring a "case or controversy" to this Court. Plaintiff Goleta does not present a cognizable case or controversy sufficient to acquire federal jurisdiction. It cannot seek to enjoin state action when the State has not brought, or even threatened, any action against Goleta.

## III. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO THE YOUNGER ABSTENTION DOCTRINE.

### A. The Younger Abstention Doctrine

Plaintiffs' attempt to obtain the declaratory and injunctive relief sought in this case is contrary to what the Supreme Court has called "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." Younger v. Harris, 401 U.S. 37, 41 (1971).

One of the plaintiffs in Younger, John Harris, was indicted in California state court and charged with a violation of the California Criminal Syndicalism Act. Id. at 38. The Syndicalism Act, among other things, prohibited "advocating, teaching or aiding and abetting the commission of any crime . . . as a means of accomplishing a change in industrial ownership or control, or effecting any political change." Id. at 38 n.1. Harris filed suit in federal district court seeking to enjoin his state court prosecution on the grounds that the prosecution – and the very existence of the Syndicalism Act – inhibited his federal free speech and free press rights. Id. at 39. A three-judge district court panel enjoined the prosecution of Harris, holding that the Syndicalism Act

6

was void for vagueness and overbreadth in violation of the first and fourteenth amendments. Id. at 40.

The Supreme Court reversed, holding that the district court – even though it had found a violation of Harris's fundamental constitutional rights – should not even have heard the case. The Court's explanation for its decision is a testament to the principles of federalism that have shaped the relationship between this country's state and federal systems of justice:

> Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts. . . .
>
> The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.

Id. at 43-44. The historical reasons for limiting federal court interference in state proceedings are reinforced by the principle of comity, which the Court defined as "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Id. at 44.

Thus, the usual course of action when a federal court is asked to enjoin state court proceedings is to deny the injunction. Id. at 45.

> Ordinarily, there should be no interference with [state] officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the State and must decide when and how this is to be done. The accused should first set up and

7

> rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.

Id., quoting Fenner v. Boykin, 271 U.S. 240, 243-44 (1926) (emphasis added).

The Younger abstention doctrine, as it is called, has been expanded and clarified in numerous subsequent cases. Most important for present purposes, Younger's abstention principles frequently have been applied when federal plaintiffs attempt to stop state court civil proceedings involving important state interests. See, e.g. Middlesex County Ethics Comm. v. Garden State Bar Assoc., 457 U.S. 423 (1982); Moore v. Sims, 442 U.S. 415 (1979); Trainor v. Hernandez, 431 U.S. 434 (1977); Huffman v. Pursue, Ltd., 420 U.S. 592 (1975); Employers Resource Mgmt. Co. v. Shannon, 65 F.3d 1126 (4th Cir. 1995); Martin Marietta Corp. v. Maryland Comm'n on Human Relations, 38 F.3d 1392 (4th Cir. 1994).

The Supreme Court has recognized some narrow exceptions to the Younger abstention doctrine. A federal plaintiff's attempt to enjoin a pending state court proceeding may be permitted to go forward "in those cases where the District Court finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" Huffman, 420 U.S. at 611, quoting Younger, 401 U.S. at 53-54, and Watson v. Buck, 313 U.S. 387, 402 (1941). Nevertheless, as long as the plaintiff's federal claims can be determined in the state proceedings, "and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." Middlesex, 457 U.S. at 435.

8

Against this backdrop, the Fourth Circuit applies a three-part test to determine when Younger abstention is appropriate. The federal court must determine whether (1) there is an ongoing state judicial proceeding; (2) the state proceedings implicate important state interests; and (3) there is adequate opportunity in the state proceeding to raise federal claims. Employers Resource, 65 F.3d at 1134; Martin Marietta, 38 F.3d at 1396; Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 251 (4th Cir. 1993); Renn v. Garrison, 845 F. Supp. 1127, 1129 (E.D.N.C. 1994). If the answer to all three questions is yes, and if the federal plaintiff cannot show "bad faith, harassment, or some other extraordinary circumstance," the federal court should abstain. See Middlesex, 457 U.S. at 435; Employers Resource, 65 F.3d at 1135.

### B.    Ace's Claims

The "ongoing state judicial proceeding" prong of the three-part test clearly is satisfied in this case. Plaintiffs filed this suit to stop an impending state civil prosecution. The state court action against Ace actually was filed on the same day that this case was filed. Ace has removed the state court action to this Court, but a motion to remand is pending. The arguments for why a remand is appropriate are set forth in the memorandum supporting the State's motion in case number 5:02-CV-69-F(3) and need not be repeated here.[4] See Memorandum of Law in Support of Motion to Remand, North Carolina ex rel. Cooper v. Ace Cash Express, Inc., No. 5:02-CV-69-F(3) (E.D.N.C. Mar. 4, 2002) ("Remand Brief") (attached hereto as Ex. 3).

---

[4] As defendants noted earlier, the interrelatedness of this motion and the State's motion to remand in case number 5:02-CV-69-F(3) makes it appropriate to consider the two motions together.

9

Turning to the second prong of the abstention test, the state court action that plaintiffs seek to enjoin plainly implicates important state interests. See, e.g., Middlesex, 457 U.S. at 434 (enforcement of attorney ethics rules is an important state interest); Martin Marietta, 38 F.3d at 1397 (enforcement of employment discrimination rules is an important state interest). The State has an important interest in protecting its citizens from predatory lending and usury. The state court action against Ace is aimed at stopping Ace's practice of making payday loans that clearly violate North Carolina's usury and other consumer protection laws. See State Court Complaint, ¶¶ 4-32.

The third prong of the abstention test asks whether there is adequate opportunity in the state proceeding to raise federal claims. Plaintiffs apparently claim that the state court action impairs their rights under the National Bank Act,[5] and further contend that North Carolina's usury and consumer protection laws are preempted by the NBA in this context. (See Complaint, ¶¶ 18-21, 24-27, 30-34). Ace, however, faces no obstacle to raising its alleged federal preemption defense in state court. In fact, it already has raised that defense in the state court action. See Answer, North Carolina ex rel. Cooper v. Ace Cash Express, Inc., No. 5:02-CV-69-F(3) (E.D.N.C. Feb. 27, 2002) ("State Court Answer") (attached hereto as Ex. 4). The burden is on Ace to show that it is somehow barred from presenting its federal claims in state court. See Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 14 (1987). Given that "state courts are fully competent to decide issues of federal law," Forst, 4 F.3d at 251, this is a burden that Ace cannot meet.

---

[5] As noted above, the source of Ace's alleged federal rights is unclear from plaintiffs' complaint. The complaint clearly alleges that Goleta has certain rights under the National Bank Act, but the source of Ace's alleged federal rights is never identified.

10

Defendants do not expect plaintiffs to argue that the state court action was filed in bad faith or simply to harass Ace. Ace's payday loans clearly violate North Carolina law absent any preemption defense (the legitimacy of which is far from clear), so State action to enforce the law is prima facie in good faith. Plaintiffs may argue, however, that their preemption claims constitute the kind of "extraordinary circumstance" that allows them to avoid the Younger abstention doctrine.

Preemption claims do not provide Ace (or anybody else) with an exemption from abstention. The courts have made it clear that federal plaintiffs cannot avoid application of the Younger doctrine by claiming that the state laws under which the federal defendants are proceeding in state court are preempted by federal law. See, e.g., New Orleans Public Serv., Inc. v. Council of the City of New Orleans ("NOPSI"), 491 U.S. 350, 364-65 (1989); Employers Resource, 65 F.3d at 1136; Martin Marietta, 38 F.3d at 1396.

The Fourth Circuit's decision in Employers Resource is especially instructive on this point. The Virginia State Corporation Commission ("SCC") had filed a state administrative proceeding against Employers Resource Management Company, Inc. ("ERM"). Employers Resource, 65 F.3d at 1129. ERM provided services to approximately 1,200 small businesses, including acting as the administrator for their employee benefits plans pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"). Id. at 1128-29. The SCC alleged in the state proceeding that ERM was operating a benefits plan known as a Multiple Employer Welfare Arrangement ("MEWA") in violation of Virginia law. Id. at 1129. Instead of defending that claim in the state proceeding, ERM – like Ace in the state court action at issue in this case – removed the state proceeding to federal court. ERM also filed a second

11

federal court lawsuit, analogous to this one, seeking injunctive and declaratory relief under ERISA to prevent the SCC from subjecting ERM to regulation under Virginia law. See id.

The district court remanded the original state proceeding to the SCC and denied ERM's request for equitable relief on the grounds that declaratory and injunctive relief were barred by both the Anti-Injunction Act, 28 U.S.C. § 2283, and the Younger abstention doctrine.[6] Id. The Fourth Circuit, reviewing the district court's denial of declaratory and injunctive relief, affirmed.[7]

The Fourth Circuit recognized that "there is compelling evidence supporting the proposition that Congress intended for ERISA to preempt state law." Id. at 1130 n.5. The court further recognized, however, that "[t]he fact that questions arising under ERISA are federal in nature is not enough to circumvent the dictates of . . . the Younger abstention doctrine." Id. at 1129. ERM conceded that all three elements of the abstention test had been met – as they are in this case – but argued that its claims presented "a set of extraordinary circumstances" that warranted "a circumvention of the Younger abstention doctrine so that the substantive issue of whether ERM is operating a MEWA can be resolved in federal court." Id. at 1135.

The Fourth Circuit rejected this argument. First, the court distinguished its holding in Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 251 (4th Cir. 1993). In that case, the court explained, Younger abstention was deemed inappropriate because Congress, in the Railroad Revitalization and Regulatory Reform Act of 1976, had determined that "railroads

---

[6] The Anti-Injunction Act and its application in this case are discussed in section IV of this brief.

[7] The remand of the original state proceeding was not appealable. ERM, 65 F.3d at 1129 n.2, citing 28 U.S.C. § 1447(d).

12

were entitled to adjudicate their disputes with state taxing authorities in federal court."

Employers Resource, 65 F.3d at 1135, quoting Forst, 4 F.3d at 254. National banks – let alone non-banks such as Ace – have no similar right to exclusive federal jurisdiction under the National Bank Act. See Remand Brief at 15.

Regarding ERM's ERISA claims, the Fourth Circuit noted that "the federal-state balance, which Younger abstention is designed to maintain, has been skewed sharply in favor of the federal system in the ERISA context." Employers Resource, 65 F.3d at 1136. Nevertheless, the federal courts were required to abstain from interference with the SCC's state administrative proceeding.

> The problem for ERM is that it has not shown, as the railroad company in Forst did, how it would be injured by having to raise its preemption defense in the state proceedings rather than in federal district court. . . . ERM has not provided us with any reason to believe that the Commission is either incapable of reviewing ERM's claim of preemption under ERISA or that the Commission is somehow less trustworthy than its federal counterpart. We refuse to create an exception to Younger abstention based on ERM's mere assertion of an ERISA preemption challenge.

Id.

The same reasoning applies in this case. Ace can assert any preemption arguments it may have in the state court action. The state court is fully capable of adjudicating those claims. Thus, under Younger and its progeny, Ace's claims in this case should be dismissed.

### C. Goleta's Claims

In section V of this brief, defendants argue that Goleta's claims should be dismissed for lack of subject matter jurisdiction. But even if the Court determines that it has subject matter

13

jurisdiction over Goleta's claims, those claims should be dismissed pursuant to the Younger abstention doctrine.

The principles of federalism and comity that require dismissal of Ace's claims apply equally to Goleta's claims. Goleta is attempting to stop an ongoing state court proceeding against Ace even though Goleta is not a party to that proceeding, even though there has been no judgment against Ace in that proceeding, and even though the State has disavowed instituting such a proceeding against Goleta. Goleta's attempt to get this Court to enjoin a state court proceeding against another entity is, if anything, even more of an affront to the dignity of the state courts than Ace's effort to do the same.

Goleta may argue, however, that the three-part test for determining the propriety of Younger abstention is not satisfied, as to its claims, because it is not a party to the state court action it seeks to enjoin. The argument, presumably, would be that because Goleta is not a party to that action, there is no ongoing state proceeding against it, and it will have no opportunity in the state proceeding to raise its federal preemption claims. See, e.g., Employers Resource, 65 F.3d at 1134 (first and third prongs of abstention test).

The insubstantiality of any such argument is apparent from the pleadings in this case. Goleta has identified its interests with Ace almost completely; it alleges that an action against Ace is essentially an action against Goleta. (See, e.g., Complaint ¶¶ 11, 13, 21, 26, 34)

More importantly, Goleta has every opportunity to present its federal preemption arguments in the state court action. Even if it does not formally intervene, its claims and interests will be fully represented by Ace. They have the same counsel. They brought this

14

federal court action together. They clearly are working in concert with respect to every aspect of their payday lending scheme.

Finally, Ace's preemption claims are the same as Goleta's. If Ace prevails on those claims in the state court action, the State will be barred from later litigating them against Goleta (even if it had any plans to do so, which it does not). See, e.g. State ex rel. Tucker v. Frinzi, 344 N.C. 411, 413-14 (1996) (discussing res judicata and collateral estoppel); Lawson v. Toney, 169 F. Supp. 2d 456, 462 (M.D.N.C. 2001) (discussing preclusive effect of state court judgment in federal court).

The fact that Goleta is not presently a party to the state court action should have no effect on the Younger abstention analysis, insofar as it concerns Goleta. Thus, Goleta's attempt to enjoin the state court action against Ace, like Ace's efforts on its own behalf, should be dismissed.

## IV. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO THE ANTI-INJUNCTION ACT .

The Anti-Injunction Act "has helped to define our nation's system of federalism" for over 200 years. Employers Resource, 65 F.3d at 1130. The Act states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

The fact that a state proceeding involves a question of federal law does not trigger the "expressly authorized" provision of the Anti-Injunction Act. "Rather, when a state proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek resolution of that

15

issue by the state court." Employers Resource, 65 F.3d at 1130, quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 149-50 (1988). The Supreme Court has held, however, that claims brought pursuant to 42 U.S.C. § 1983 are exempt from the Anti-Injunction Act because they fall under the "expressly authorized" exception in the Act. Mitchum v. Foster, 407 U.S. 225, 242-43 (1972).

Plaintiffs in this case probably will contend that their claims for injunctive and declaratory relief are exempt from the Anti-Injunction Act because they have been brought pursuant to 42 U.S.C. § 1983. This is true, however, only if plaintiffs have properly asserted claims under section 1983. They have not.

First, as noted above, Ace has not asserted any identifiable federal right that can be vindicated pursuant to section 1983. Counts I through III of plaintiffs' complaint allege that Goleta has certain rights under the National Bank Act, but there is no allegation that Ace has any such rights.[8] Indeed, as the State pointed out in its brief on the remand issue in the state court action, Ace, as a non-bank entity, has no such rights. See Remand Brief at 18-26.

Count IV of plaintiffs' complaint alleges a section 1983 claim for violation of their fourteenth amendment due process rights, but the pleading does not identify any actual violation of Ace's constitutional rights. The complaint does say that "[a]s applied in the context of [the payday loans at issue in the state court action], the North Carolina laws at issue in the State Proceedings are not rationally related to the achievement of any legitimate government purpose." (Complaint, ¶ 37) This apparently is a claim that application of North Carolina's usury and

---

[8] Ace is alleged only to have some undefined "rights under federal law." (Complaint, ¶¶ 21, 27, 34)

16

consumer protection laws, when they are preempted by the National Bank Act, would violate plaintiff's fourteenth amendment substantive due process rights. Ace, however, has no rights under the NBA and has not asserted any in this case.

Plaintiffs also seem to imply that the state court action against Ace somehow violates their procedural due process rights. (Complaint, ¶ 38). This Court should not countenance any suggestion that North Carolina's state courts will not provide Ace with procedural due process in the absence of a more specific claim than the one asserted here.

Thus, because Ace has not alleged any identifiable federal right that can be asserted in an action under section 1983, its claims are barred by the Anti-Injunction Act.

In addition, at least one court has held that 42 U.S.C. § 1983 is not a proper vehicle for the assertion of rights under the National Bank Act. See First Nat'l Bank of Omaha v. Marquette Nat'l Bank of Minneapolis, 636 F.2d 195, 199 (8th Cir. 1980). Defendants are aware that developments in the law since 1980 call the continuing validity of this holding into question. See, e.g., Wilder v. Virginia Hosp. Assoc., 496 U.S. 498 (1990) (section 1983 action to enforce hospital's right to receive payments under the Medicaid Act). Defendants have not found any cases directly contrary to Marquette, however, and that decision has not been overruled. Moreover, the Supreme Court is scheduled to consider, later in this term, a case that tests the extent to which federal statutory claims can be asserted under section 1983. See Owasso Ind. Sch. Dist. No. I-011 v. Falvo, 122 S. Ct. 934, 2002 U.S. LEXIS 619 at *9 (Feb. 19, 2002) (noting that the Court has granted certiorari in Gonzaga Univ. v. Doe, 534 U.S. ___, 122 S. Ct. 865, 151 L. Ed. 2d 738 (2002), to consider whether the Family Educational Rights and Privacy Act of 1974 provides private parties with a cause of action enforceable under section 1983). The

17

Supreme Court's ruling in Gonzaga may clarify that the NBA claims asserted by plaintiffs in this case are not cognizable under section 1983.

Under the circumstances, defendants contend that claims for violations of rights established by the National Bank Act cannot be asserted pursuant to section 1983, if only to avoid any suggestion that they have waived that argument. Thus, to the extent that plaintiffs' claims are founded on the NBA – and defendants can identify no other alleged foundation – their claims are barred by the Anti-Injunction Act.

## V. GOLETA'S CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE THERE IS NO CASE OR CONTROVERSY BETWEEN GOLETA AND THE DEFENDANTS.

Goleta seeks declaratory and injunctive relief on the theory that the State is interfering with its rights under the National Bank Act to make payday loans to North Carolina borrowers. The State, however, has neither initiated nor threatened any action against Goleta. The State's only enforcement action is against Ace. That state court action is premised on the State's claim that Ace actually makes the payday loans at issue, and on the alternative theory that Ace is acting as a loan broker without complying with the requirements of North Carolina law governing loan brokers.

Goleta has the burden of establishing that there is federal jurisdiction for its claims. Under Article III of the United States Constitution, Goleta must convince this Court that there is a "case or controversy" arising under federal law and that it has actual legal rights at stake that require adjudication. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982). "The requirements of Article III are not

18

satisfied merely because a party requests a court of the United States to declare its legal rights." Id. Unless there is a case or controversy, the Court lacks subject matter jurisdiction.

In order to establish the case or controversy requirement, a plaintiff must show that it has standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The plaintiff must show that it "has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91. 99 (1979). In addition to demonstrating a "concrete and particularized injury," the plaintiff must show that the injury is fairly traceable to the challenged action of the defendant, and that the injury is likely to be redressed by a favorable decision from the court. Lujan, 504 U.S. at 560-61; Burke v. City of Charleston, 139 F. 3d 401, 405 (4th Cir. 1998).

There is no case or controversy between Goleta and these defendants. Goleta's claims are premised on allegations that the State is interfering with Goleta's rights under the National Bank Act, principally the rights to "export" interest rates and to employ agents to originate loans. The State does not dispute these rights and has filed no action to enjoin Goleta from exercising them. The State acknowledges that Goleta, under section 85 of the NBA, has the right to charge interest rates permitted by California law on its loans, assuming that Goleta is acting as a bona fide lender. See Remand Brief at 4.

The state court action that plaintiffs seek to enjoin is not against Goleta. It is against Ace, for alleged violations of North Carolina law in connection with loans that Ace makes to North Carolina citizens. If the State fails to prove that Ace is in fact the lender, Goleta's ability to export California interest rates to North Carolina will not be affected at all. If the State prevails against Ace, Goleta's rights under the National Bank Act will not be affected; it simply will have

19

to find a way to make loans in North Carolina through a legitimate agent. The State's alternative theory – that Ace is violating the North Carolina Loan Broker Act, G.S. § 66-106, et seq. – is likewise directed entirely at Ace. If the State prevails on the loan broker claim, Ace will have to comply with the registration and disclosure provisions of state law but will not be prevented from originating loans for Goleta or anyone else.

Goleta's entire case against the defendants is derivative. Because defendants have not taken or threatened any action against Goleta, Goleta attempts to establish standing by piggybacking on Ace's claims. However, "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975); Burke, 139 F. 3d at 405. When a plaintiff is not itself the subject of the challenged government action or inaction, "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." Lujan, 504 U.S. at 562.

In the absence of a clear threat or concrete injury, Goleta cannot invoke this Court's jurisdiction to enjoin the State from acting, especially when the State has disclaimed any intention of acting against Goleta. Neither should Goleta be heard to seek declaratory relief under the National Bank Act when none of its rights under the Act are called into question by the State's action against Ace. Goleta cannot show that it has legal rights at stake that require adjudication by this Court, and the Court therefore lacks subject matter jurisdiction over Goleta's claims.

## VI.    CONCLUSION

Ace and Goleta are asking the Court to enjoin the State from proceeding with a state law enforcement action filed against Ace in state court. Under Younger v. Harris and its progeny, the

20

Court should abstain from considering plaintiffs' claims. The North Carolina courts are fully capable of adjudicating those claims. In addition, plaintiffs' claims are barred by the Anti-Injunction Act because they have failed to allege any identifiable federal rights that can be asserted in an action under 42 U.S.C. § 1983. Finally, there exists no case or controversy between Goleta and the State, as the State's enforcement action is against Ace only, and the State has threatened no action against Goleta. Accordingly, for the reasons set forth above, defendants respectfully request that the Court dismiss this action.

This the 11th day of March, 2002.

Gary R. Govert (N.C. State Bar No. 13510)
Special Deputy Attorney General

Philip A. Lehman (N.C. State Bar No. 06721)

M. Lynne Weaver (N.C. State Bar No. 19397)
Assistant Attorneys General
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
(919) 716-6000 (phone)
(919) 716-6050 (fax)

Attorneys for Roy Cooper, in his official capacity as Attorney General of North Carolina

21

*L. McNeil Chestnut* (signature)

L. McNeil Chestnut (N.C. State Bar No. 09742)
Assistant Attorney General
Counsel to Commissioner of Banks
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
(919) 716-6803 (phone)
(919) 716-6755 (fax)

Attorney for Hal D. Lingerfelt, in his official
capacity as Commissioner of Banks of
North Carolina

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing MEMORANDUM OF

LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR FOR JUDGMENT

ON THE PLEADINGS upon the plaintiffs' counsel of record by depositing the same in the U.S.

mail, first-class, postage pre-paid, and addressed as follows:

>Richard W. Ellis
>Paul K. Sun, Jr.
>Matthew W. Sawchak
>ELLIS & WINTERS LLP
>Post Office Box 33550
>Raleigh, NC 27636
>
>Attorneys for plaintiffs Goleta National Bank and
>ACE Cash Express, Inc.

This the ___11th___ day of March, 2002.

*M. Lynne Weaver* (signature)

M. Lynne Weaver
Assistant Attorney General

22

# NOTE:

This Is Only A Partially Scanned Document.

Please See Case File For Attachments, Exhibits, Affidavits, Or Other Material Which Has Not Been Scanned